<u>UNITED STATES DISTRICT COURT</u>
<u>DISTRICT OF CONNECTICUT</u>

| | | |
|---|---|---|
| **Kefilwe Lekuntwane, individually and on behalf of other similarly situated individuals,** | : : : : | **CIVIL ACTION NO.:** **20-cv-00386-RNC** |
| **Plaintiffs** | : | |
| | : | |
| **V.** | : | |
| | : | |
| **Help at Home CT, LLC, Alzheimer's and Dementia Care, LLC, Homecare Connections, LLC and Mary Ann Ciambriello** | : : : : | **MAY 01, 2024** |
| **Defendants.** | | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF NAMED PLAINTIFF'S UNOPPOSED MOTION TO APPROVE RULE 23 CLASS AND FAIR LABOR STANDARDS ACT COLLECTIVE SETTLEMENT**</u>

**I.    INTRODUCTION**

Kefilwe Lekuntwane ("Named Plaintiff") hereby files this Memorandum of Law in support of her motion for the Final Approval of the parties' Court-enforced settlement agreement ("Settlement Agreement") to resolve the Plaintiff's claims asserted in this lawsuit on her behalf and on behalf of a putative collective and under the Fair Labor Standards Act ("FLSA") and putative class under Rule 23 and the Connecticut Minimum Wage Act ("CMWA). The Settlement Agreement is attached to the accompanying memorandum of law as **Exhibit** 1.[1]

The Court should approve the Agreement because it is the result of arms' length negotiations, including a two-day mediation before Federal Magistrate Judge Joan Margolis. It is a fair and reasonable resolution of a *bona fide* dispute involving claims for unpaid overtime

---

[1] As noted in the Motion, Defendants previously opposed Plaintiff's efforts to enforce the purported settlement, and Defendants reserve their rights to challenge the Court's enforcement of the settlement agreement against them at the conclusion of the proceedings in the District Court.

1

wages under the FLSA and the CMWA. Accordingly, the Named Plaintiff respectfully requests that this Court enter final approval of the settlement, and an order dismissing the action with prejudice.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On March 23, 2020, the Named Plaintiff commenced this Civil Action by filing a complaint. ECF No. 1 (*Compl.*). The Named Plaintiff asserts claims for unpaid minimum wage and overtime wages under the FLSA and CMWA on her own behalf and on behalf of all allegedly similarly situated employees of Defendants Help at Home CT, LLC, Alzheimer's and Dementia Care, LLC, Homecare Connections, LLC and Mary Ann Ciambriello ("Defendants"), who worked as home health aides ("HHAs"). The Named Plaintiff alleged that, *inter alia*, Defendants failed to pay overtime to HHAs during the period March 23, 2017, to the date of final judgment. The Named Plaintiff further alleged that Defendants failed to pay her for her sleep time, alleging that she had been interrupted frequently enough to render those periods compensable. Defendants deny that any HHAs were ever denied minimum wage or overtime pay and further assert that the HHAs were properly paid all amounts due.

On June 20, 2020, the parties jointly moved to stay the litigation to conduct a settlement conference before a magistrate judge. ECF No. 18. On or about March 15, 2021, the Parties attended a mediation before Magistrate Judge Margolis. After a full day of negotiating, the Parties made progress but did not reach agreement. The parties continued to work with each other and met with Magistrate Judge Margolis again on April 8, 2021. During this second session, the parties reached an agreement in principle and executed a Memorandum of Understanding through their attorneys.

SG-20942784.1

Defendants reduced the parties' agreement to a written settlement agreement that Plaintiff and her representatives executed. The settlement agreement established a "common fund" of $1,340,000, from which payments will be made to the Named Plaintiff, her lawyers, a settlement administrator, and the class. Defendants never signed the agreement and contended that the purported settlement was not enforceable against them, but this Court enforced the agreement. ECF No. 95 ("That the settlement agreement has yet to be signed by the defendants does not make it any less enforceable.") (*Order Granting Mot Enforce Settlement Agreement*).

On February 22, 2024, this Court granted preliminary approval to the FLSA collective and Rule 23 Class. ECF No. 105 (*Order Granting Prelim Approval*). Subsequently, Plaintiff's counsel hired Simpluris to mail the Court-approved Notice to the class informing them of their rights as it relates to this case. The Notice Period is discussed in more detail *infra* at Section IV.

## III.    OVERVIEW OF THE SETTLEMENT AGREEMENT

The terms fully set forth in the Settlement Agreement are summarized as follows:

1) **Type of Settlement**: FLSA Collective and Rule 23 class action.

2) **Maximum Gross Settlement Amount:** One million, three hundred forty thousand ("$1,340,000.00")[2]

3) **Putative FLSA Collective**: All individuals employed by Defendants who worked as Home Health Aides and have claims for unpaid overtime and/or minimum wage between March 23, 2017, and September 30, 2021.  Based on the payroll records provided by Defendants, there are precisely 349 individuals who fit this description.

4) **Putative Rule 23 Class**:  All individuals employed by Defendants who worked as Home Health Aides and have CWA claims for unpaid overtime between March 23, 2018, to September 30, 2021.  There are 349 individuals who fit this description.

5) **Administration**: The Parties have chosen to hire a Simpluris ("Settlement Administrator") to administer the settlement.

---

[2] Defendants will also, separately from this fund amount, pay employer's share of FICA payroll taxes on all W-2 wage payments issued under this Agreement.

6)    **Notice Plan:** Within thirty (30) days following the date of a Court ordering preliminary approval,  the Settlement Administrator will send via First Class mail to the Rule 23 Class and FLSA Collective members a Notice of Settlement and Release Agreement (Ex. E to the Settlement Agreement) to each member of the Putative FLSA Collective, and Rule 23 Class  ("the Notice"). Said notice will include the individual's estimated minimum gross settlement payment amount if there was 100% participation, which amount could increase slightly as set forth more fully below.  If a notice is returned as undeliverable, the Settlement Administrator will make a reasonable effort to locate a new address for the individual and resend the notice within three business days.

7)    **Opt-Out Period**: Thirty (30) days from mailing of the initial Notice. Class Counsel will have until 14 days after the end of the Opt-Out Period to file exclusion requests and/or objections with the Court.

8)    **Attorneys' fees and costs:** subject to Court approval, one third of the Maximum Gross Settlement Amount or $446,666 as reasonable attorneys' fees, and $17,700 as reasonable out-of-pocket costs paid to Lennox Miller, Accountant. These fees and costs include all such fees and costs incurred to date, as well as all additional fees and costs expected to be incurred in securing Court approval of the settlement and monitoring the settlement.

9)    **Service Payment or Incentive Award:** Twenty thousand dollars ($20,000.00) to Named Plaintiff to be paid from the Maximum Gross Settlement Amount, if approved by the Court.

10)   **Sleep Interruptions Payment:** Twenty thousand dollars ($20,000.00) to Named Plaintiff to be paid from Maximum Gross Settlement Amount, if approved by the court.

11)   **Formula for Share Calculation:** The Parties shall calculate the share for each Participating Plaintiff accounting the claims brought, the number of weeks worked, the respective time periods, credits for backpay overtime wages paid which preceded this agreement, and any other evidence available with respect to the number of hours worked and claimed.  Generally, shares shall be calculated on a

proportional basis using points for the number of weeks for each respective period of time when damages were alleged to have accrued.

12) **Release:** The Named Plaintiff will execute a general release of any and all claims she may have against Defendants. The claims of the class will be released by operation of the Settlement Agreement and the Final Approval of this matter.

13) **Distribution Plan:** No less than ninety (90) days after the filing of this motion, the court shall schedule a hearing for final approval. Following final approval, Defendants will make payments to Class Counsel and the Class over the course of five years as agreed in the Settlement Agreement.

14) **Unclaimed funds:** Unclaimed funds will be distributed to the participating class members.

## IV.    CLASS NOTICE PERIOD

On March 25, 2024, Simpluris, Inc. ("Simpluris") mailed Notice of the Settlement to the Class with a deadline to opt-into the FLSA settlement and opt-out of the Rule 23 settlement of April 24, 2024 (30 days later). Simpluris sent the Court-approved Notice Package to 287 Class and Collective Members with claims for back wages. *Decl. of Markus Bulthus*, ¶ 8, attached as **Exhibit 2** (Declaration of Due Diligence). Out of those 287 Notice Packages, 76 were initially returned as undeliverable. *Id.* at ¶ 9. Simpluris found forwarding addresses for 59 Class Members and remailed their Notices. *Id.* Ultimately, 20 Notice Packages were undeliverable. *Id.* Simpluris received no objections to the Settlement or requests from Class Members to exclude themselves from the Settlement. *Id.* at ¶¶ 12-13.

## V.    LEGAL STANDARD

FLSA claims can be settled in accordance with a district court-approved compromise pursuant to 29 U.S.C. § 216(b). *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015); *see also Lynn's Food Stores Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir.

SG-20942784.1

1982). Settlement approval is within the court's discretion, which "should be exercised in light of the general judicial policy favoring settlement." *In re Sumitomo Copper Litig*., 189 F.R.D. 274, 280 (S.D.N.Y 1999) (quoting *In re Paine Webber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997)).

A district court may approve a proposed FLSA settlement if it determines that the compromise reached "is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions" rather than "a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food*, 679 F.2d at 1354; *see also Dixon v. Zabka*, 2013 U.S. Dist. LEXIS 77715, *5 (D. Conn. May 23, 2013) ("If the proposed settlement reflects a reasonable compromise over contested issues, it should be approved.") (citing *Aros v. United Rentals, Inc*., 2012 U.S. Dist. LEXIS 104429 (D. Conn. July 26, 2012)).

A settlement's fairness is determined by looking at both the settlement's terms and the negotiating process leading to settlement. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted). "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116-17 (2d Cir. 2005) (citing Manual for Complex Litigation, Third, § 30.42 (1995)). There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Id.* at 116-117 (citation omitted). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Id*. (citing 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11:41, at 87 (4th ed. 2002)).

SG-20942784.1

## VI.    ARGUMENT

### A.    *This Court Should Approve the Parties' FLSA Settlement*

####          i.    This Court Should Approve the Proposed Settlement Because There is a *Bona Fide* Dispute

"The first step in analyzing the settlement agreement is determining whether there are FLSA issues that are 'actually in dispute.'" *Rivera v. Dixson*, 2015 U.S. Dist. LEXIS 11248, at *4 (D. Md. Jan. 29, 2015). Defendants opposed the claims made in Plaintiff's complaint, including that they failed to pay Plaintiff and the class overtime wages. Accordingly, there has been a *bona fide* dispute of FLSA and CMWA issues in this case.

####          ii.    The Proposed Settlement is Fair and Reasonable

"Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement they achieved meets the requirements of due process." *Castagna v. Madison Square Garden, L.P.*, 2011 U.S. Dist. LEXIS 64218, at *14 (S.D.N.Y. June 7, 2011); *also Maced. Church v. Lancaster Hotel, LP*, 2011 U.S. Dist. LEXIS 62063, at *26 (D. Conn. June 9, 2011) (there is a "strong presumption" in finding a settlement fair if it has been negotiated at arms-length.). During these protracted settlement negotiations, both the Named Plaintiff and Defendants were represented during the negotiations by legal counsel experienced in employment matters. Under these circumstances, including an arms' length negotiation assisted by a federal Magistrate Judge, the strong presumption of fairness and reasonableness of the Settlement Agreement applies.

Second, the recovery for the Named Plaintiff and other HHAs who may choose to receive a share of the settlement also establishes that the Settlement Agreement is fair and reasonable. Indeed, the settlement is especially reasonable when considering what each HHA will be offered against the challenges he/she would have in advancing their claims individually.

SG-20942784.1

Third, the Settlement Agreement is reasonable because the Class' releases are limited to unpaid overtime and wages claims and thus are not overly broad. The settlement agreement does not contain the type of onerous, non-monetary terms that the *Cheeks* Court considered objectionable. *See Cheeks*, 796 F.3d at 206.

Although Class Counsel believe that both the material facts and relevant law support their claims for additional sums for the class, they recognize the uncertainty of the outcome of this litigation, the defenses that will be asserted, and the anticipated duration and expense of litigation of this case through discovery, pre-trial motions, trial, and any appeals. When the terms of the proposed settlement, which will confer immediate benefits upon the participating putative Rule 23 Class and FLSA Collective members, are considered within a "risk/reward" analytical framework, the Named Plaintiff and Class Counsel believe that the proposed Settlement Agreement is demonstrably fair, adequate and reasonable, and should therefore be approved by this Court. The Named Plaintiff reasonably believes that, if the Settlement Agreement is not approved, this case will require contentious litigation and substantial expense to complete. The Named Plaintiff will proceed with a motion for Rule 23 certification of the CMWA claims, which Defendants will oppose.

Liability will also be hotly contested. Under these circumstances, the Court may reasonably conclude that continued litigation is risky because it will be lengthy, complex and expensive, thus favoring approving the settlement. *See Wal-Mart Stores*, 396 F.3d at 118-19.

Under the proposed settlement, approximately 287 HHAs (less those who choose to opt-out of the Rule 23 Class) and approximately 2 members of the FLSA Collective would receive shares from the settlement on the basis of their CMWA claims and some additional consideration on the basis of FLSA claims.  The participating HHAs would likely prefer to receive their

settlement payments rather than continue to litigate for years or file individual actions. *See Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) ("the Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, 'It has been held proper to take the bird in the hand instead of the prospective flock in the bush.'") (internal citation omitted). If any putative FLSA Collective or Rule 23 Class Member does not want their share of the settlement, they can decline it retain their right to file an individual action. *See Yuzary*, 2013 U.S. Dist. LEXIS 144327 (parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits later).

Accordingly, the Court should grant final approval to the Settlement Agreement.

### B.     *The Court Should Approve the Parties' Rule 23 Settlement*

When examining whether a class action settlement is fair, courts consider the nine (9) factors outlined by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Those factors are:

> (1) The complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* (internal citations omitted).

For many of the same reasons as discussed above, this Court should also approve the Rule 23 class settlement.

First, the "complexity, expense, and likely duration of the litigation" support approving this settlement for the reasons discussed *supra* at pgs. 8-9.

"The reaction of the class to the settlement" supports approval of the settlement. No class members opted-out of filed objections to the settlement. *See, e.g., Grant v. Bethlehem Steel Corp.,* 823 F.2d 20, 24 (2d Cir.1987) (approving class settlement where 45 of the 126 class members (approximately 36%) expressed opposition to the settlement).

"The stage of the proceedings and the amount of discovery completed" supports approving the settlement. As noted above, this case is at an early procedural stage. The parties conducted sufficient discovery to calculate and determine damages and negotiate a settlement. Much more discovery will be needed to litigate this matter if the case proceeds.

"The risks of establishing liability," "establishing damages," and "the risks of maintaining the class through trial" support approving the settlement. While Plaintiffs believe in the strength of both of their claims, Defendants believe in the strength of their defenses. This case involves several complex legal questions. *See infra* pg. 18 (discussing various legal issues in analysis supporting requested fee award).

"The ability of the defendants to withstand a greater judgment" supports approving the settlement. Here, it is possible Defendants cannot withstand a greater judgment. Defendants negotiated for payments to the class to occur over a period of approximately five (5) years. **Ex. 1**, ¶ 4.7. Prosecuting this case further will be even more costly for both parties. The parties have to conduct full discovery on the sleep interruptions claims, which will include numerous depositions, brief motions for class certification, summary judgment, and possible decertification, and possibly trial. It is possible that Defendants, after incurring those legal expenses, may not be able to pay the same amount as the settlement includes now.

SG-20942784.1

"The range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation" support approving the settlement.

### C.      *The Court Should Approve the Incentive Award to Plaintiff*

"Incentive awards encourage class representatives to participate in class action lawsuits[.]" *Moses v. New York Times Co.,* 79 F.4th 235, 253 (2d Cir. 2023). Courts in the Second Circuit routinely approve incentive payments in class and collective action settlements. *Sheppard v. Consol. Edison Co. of New York, Inc.*, 2002 U.S. Dist. LEXIS 16314, at *19-20 (E.D.N.Y. Aug. 1, 2002) (collecting cases approving incentive payments). Under the Settlement Agreement and subject to Court approval, the Named Plaintiff will receive an incentive award (or service payment) in the amount of $20,000.

The Named Plaintiff is the sole representative of the putative Rule 23 Class and FLSA Collective. *Declaration of Nitor V. Egbarin* ¶ 2 (hereinafter "*Egbarin Decl.*") attached as **Exhibit 3.**  She made the proposed settlement available for other HHAs through her efforts in being a Named Plaintiff. Named Plaintiff hired Class Counsel, met with Class Counsel on multiple occasions, attended both Settlement Conferences, communicated via email and telephone many times with Class Counsel during the litigation. *Id.*  The Named Plaintiff was a valuable, accurate, and responsive source of information with respect to what discovery to pursue and general knowledge as to the Defendants' business practices, record keeping, and her contributions facilitated recovery in this matter. *Id.* She has remained engaged in this litigation throughout the four (4) years it has been on file. *Id.*

Incentive awards compensate employees taking the risk of lending their names, reputations, and efforts to the prosecution of litigation on behalf of others. *E.g, Aros*, 2012 U.S.

Dist. LEXIS 104429, at *8 ("Named plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny.") (*citing, e.g.*, *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, 2010 U.S. Dist. LEXIS 12762 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts.")); *Velez v. Majik Cleaning Serv.*, 2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 22, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.").

It is not uncommon for courts to approve incentive payments in the range of the one requested in this case, and in even higher amounts. *See, e.g., Kiefer, et. al., v. Moran Foods, LLC, et. al.*, No. 12-CV-756 (D. Conn. Aug. 5, 2014) (ECF No. 328) (granting final settlement approval, awarding incentive payment to main named plaintiff of $30,000, and to two named plaintiffs of $10,000 each); *Willix v. Healthfirst, Inc.*, 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) (approving service awards of $30,000, $15,000, and $7,500)*; Duchene v. Michael Cetta, Inc.,* 2009 U.S. Dist. LEXIS 85955 (S.D.N.Y. Sept. 10, 2009) (approving an award of $25,000); *Sewell v. Bovis Lend Lease LMB, Inc.*, 2012 U.S. Dist. LEXIS 53556, at *40 (S.D.N.Y. Apr. 16, 2012) (approving service payments of $10,000 and $15,000); *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, 2010 U.S. Dist. LEXIS 12762, at *5 (S.D.N.Y. Feb. 9, 2010) (finding individual incentive awards ranging up to $15,000 to be appropriate); *Reyes v. Altamarea Grp., LLC*, 2011 U.S. Dist. LEXIS 115984 (S.D.N.Y. Aug. 16, 2011) (approving service awards of $15,000 and $5,000); *Khait v. Whirlpool Corp.*, 2010 U.S. Dist. LEXIS 4067, at *26 (E.D.N.Y. Jan. 20, 2010)  (approving awards of $15,000 and $10,000 to named plaintiffs);

SG-20942784.1

*Yap v. Sumintomo Corp. of America*, 1991 WL 29112, at *9 (S.D.N.Y. 1991) (awarding $30,000 additional compensation to representative Plaintiff). The proposed Incentive Award here is reasonable because it falls within the middle range of such awards, and is thus reasonable.

Moreover, an incentive payment for the Named Plaintiff is justified because "an employee fearful of retaliation or of being 'blackballed' in his or her industry may choose not to assert his or her [unpaid wages] rights." *Salim Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234, 244 (2d Cir. 2011) (citation omitted).

Accordingly, the Court should approve an Incentive Award to Plaintiff.

**D.**    ***The Payment to Lekuntwane for Her "Sleep Interruptions" Claim is Fair***

Domestic service employees and their employers can exclude "by agreement between themselves, the amount of sleeping time, mealtime and other periods of complete freedom from all duties[.]" 29 C.F.R. § 552.102(a). "Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude … a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked[.]"  29 C.F.R. § 785.22(a).

Employers can only exclude sleeping time if "the employee can usually enjoy an uninterrupted night's sleep." 29 C.F.R. § 785.22(a).  "If the sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked. If the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted." 29 C.F.R. § 785.22(b); 29 C.F.R. § 552.102(a) (same for domestic service employees). "If an employee cannot obtain at least five hours of uninterrupted sleep, the entire eight-hour period must be counted towards working time." *Bonn-Wittingham v. Project OHR, Inc.,* 792 F. App'x 71, 74 n. 1 (2d Cir. 2019).

Plaintiff alleged in her complaint that Defendants failed to compensate her for the times her sleep periods were interrupted by calls to duty. ECF No. 1, ¶¶ 37-40. The Named Plaintiff alleged that Defendants were aware of the interruptions to her sleep periods because she informed them of those interruptions. *Id.* at ¶¶ 39-40. The parties settled the Named Plaintiff's sleep and mealtime interruptions claims for $20,000 during the Settlement Conference. This amount is fair because it constitutes a reasonable estimate of the overtime owed to the Named Plaintiff, and it accounts for the risks that the Named Plaintiff faced in light of defenses raised by Defendants.

Accordingly, this Court should approve the settlement of Plaintiffs' FLSA sleep interruptions claims.

### E.    *The Proposed Attorneys' Fees are Reasonable* [3]

The CMWA and FLSA require that Courts award reasonable attorneys' fees and costs. 29 U.S.C. § 216(b) ("[t]he court in [an FLSA] action shall . . . allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action."); C.G.S. § 31-68(a); C.G.S. § 31-72. Further, courts recognize that availability of attorneys' fees under the FLSA is essential to motivate legal counsel to represent individuals who are owed wages, especially in instances in which the plaintiffs' recovery may be small. *See, e.g.*, *Estrella v. P.R. Painting Corp.*, 596 F. Supp. 2d 723, 727 (E.D.N.Y. 2009) (noting that "courts have rejected the notion that fee awards should be proportionately tied to a plaintiff's recovery" and observing that FLSA fee-recovery provisions "were designed in part to secure legal representation for plaintiffs whose wage and hour grievances were too small, in terms of expected recovery, to create a financial incentive for qualified counsel to take such cases under conventional fee arrangements").

---

[3]  This section of the memorandum is presented solely by the Named Plaintiff.  Defendants do not join in this section of the memorandum but does not oppose Plaintiff's request for the proposed attorneys' fee award.

i.    <u>Attorneys' Fees of One-Third of the Settlement Fund Are Routinely Approved in Wage Class and Collective Actions</u>

"In class and collective action wage and hour lawsuits, public policy favors a common fund attorneys' fee award." *Aros*, 2012 U.S. Dist. LEXIS 104429, at \*16 (citing *Reyes v. Altamarea Grp., LLC*, 2011 U.S. Dist. LEXIS 115984 (S.D.N.Y. Aug. 16, 2011)). "The trend in this Circuit is toward the percentage method, which 'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation[.]'" *Wal-Mart Stores, Inc.*, 396 F.3d at 121 (internal citation omitted). Attorneys' fees in the amount of one third of the Maximum Gross Settlement Amount for Class Counsel are reasonable to compensate them for their hard work in pursuing claims of unpaid overtime wages on behalf of the putative FLSA Collective and Rule 23 Class.

"Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by 'private attorneys general,' attorneys who fill that role must be adequately compensated for their efforts." *Aros*, 2012 U.S. Dist. LEXIS 104429, at \*16 (collecting cases). If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Id* at \*17.

There are several reasons that courts prefer the percentage method. The percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *see also Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients").

Additionally, the percentage of the fund method "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores*, 396 F.3d at 122 (internal quotation marks omitted). The percentage method discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method. *Savoie v. Merchants Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) ("It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method.").

The percentage method also preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Karpus v. Borelli (In re Interpublic Sec. Litig.)*, 2004 U.S. Dist. LEXIS 21429, at *32 (S.D.N.Y. Oct. 26, 2004) (quoting *Savoie*, 166 F.3d at 461 n.4). The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000).

In determining the reasonableness of an award of attorneys' fees, courts apply the following factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* at 50.

Here, one third of the Maximum Gross Settlement Amount, *i.e.,* $446,666.66, as an award for attorneys' fees and out-of-pocket costs and expenses is reasonable under the *Goldberger* factors.

First, Named Plaintiff's Counsel spent significant time and labor in this case. The work the Class Counsel performed includes, without limitation, interviewing the client and other

HHAs as part of initial investigation and informal discovery, drafting the original complaint, drafting interrogatories and document requests for Defendants, continuing follow up with defendant by email and telephone on outstanding discovery issues, interviewing former HHAs on duties and evidence of hours worked, preparing position statement and damages analyses for the Rule 23 Class and FLSA Collective ahead of the private mediation, preparing for and attending two single day mediations, continuing settlement negotiations for months after, preparing position statement and damage analysis in advance of Settlement Conference before Judge Margolis, and preparing settlement agreement and motions for settlement. *Declaration of Richard E. Hayber* ¶ 11 (hereinafter **"*Hayber Decl*.**"), attached hereto as **Exhibit 4**.

Additionally, Plaintiffs' counsel successfully moved this Court to enforce the Settlement Agreement after Defendants refused to sign it, moved for preliminary approval of the settlement, and have coordinated the distribution of notice to the class.

Together, the lawyers for the Named Plaintiff have put in over 316.58 hours in the case. *Egbarin Decl.*, ¶ 17, Ex. 3; *Hayber Decl.*, ¶ 12, Ex. 4.[4]  Presently, the combined lodestar for both firms is approximately $105,832.50.  *Id.* at ¶ 17 (122.78 hours for $46,042.50), Ex. 4; *Hayber Decl.*, ¶ 12 (193.80 hours for $59,790.00).

There will likely be many more hours of work necessary before this matter is concluded. The parties now seek final approval of this Settlement. Defendants have indicated that they intend to file an appeal to the Second Circuit after Final Approval is granted, so litigating an entire appeal is likely. *See* ECF No. 108, pg. 2 ("Defendants maintain they did not agree to the

---

[4] Attorney Egbarin's time is compiled through April 22, 2024. *Egbarin Decl.* ¶ 17, Ex. 3. Hayber, McKenna & Dinsmore's time is complied through April 30, 2024. *Hayber Decl.* ¶ 12, Ex. 4. Plaintiff's counsel reserves the right to supplement their time records if necessary. Said time records are not filed with this submission because they contain confidential attorney client privileged information.  They can be made available for an *in camera* inspection if the court so requires.

Settlement Agreement, and at this time they likely will appeal the Court's decision enforcing the terms of the Settlement Agreement against them."). Thus, the first *Goldberger* factor supports a one-third fee.

Second, the complexities of this case also support a one third fee. Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming. This case is no exception. It involved multiple legal issues such as: whether an exemption applied; whether the class was paid on a daily rate without overtime; whether their claims for sleep interruptions were based on a common employer practice; whether the appropriate class for conditional certification would be two or three years; whether equitable tolling would apply to the case and to what extent; whether the HHAs were similarly situated for the purpose of conditional certification; whether the HHAs would meet the their burden under Rule 23, whether the Named Plaintiff was a proper class representative, whether the Defendants met their burden of taking active steps to establish good faith compliance with State and Federal laws, and analysis of how the respective statutes of limitations and tolling provisions would affect the calculations of damages for the class. Accordingly, the second *Goldberger* factor also supports a one third fee.

Third, the third *Goldberger* factor also supports a one third fee award. Plaintiffs' Counsel took a great deal of risk in prosecuting this litigation on a pure contingency basis. Consequently, Class Counsel has worked on the case and advanced costs without any guarantee of payment. *Egbarin Decl.*, ¶ 17, Ex. 3. *See Castagna v. Madison Square Garden, L.P.*, 2011 U.S. Dist. LEXIS 64218, at *27 (S.D.N.Y. June 7, 2011) ("The fact that Counsel's fee entitlement was entirely contingent upon success weighs in favor of reasonableness.") Further, Class Counsel also bore the risk of obtaining conditional certification and Rule 23 Class Certification—which

has not happened yet—and likely having to defend a motion to decertify at a later stage to maintain any conditionally certified collective action or class action through a trial. *See In re Priceline.com, Inc.*, 2007 U.S. Dist. LEXIS 52538, at *10 (D. Conn. July 19, 2007) (noting plaintiffs bore risk of maintaining class through trial because, "although the court has certified the class in this case, the prospects of decertification certainly exist"). Hence, the third *Goldberger* factor also supports a one third fee.

Fourth, the quality of the representation Class Counsel has provided to the putative Rule 23 Class and FLSA Collective members also favors of a one third fee award. To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit. *Taft v. Ackermans*, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (citing *In re Global Crossing*, 225 F.R.D. at 467).

Class Counsel is experienced in wage and hour class and collective actions. *See Aros*, 2012 U.S. Dist. LEXIS 104429, at *19 ("[T]he Hayber Law Firm, LLC[5], are experienced employment lawyers with good reputations among the employment law bar. They have prosecuted and favorably settled many employment law class actions, including wage and hour class actions."); *Hayber Decl.* ¶ 7 (listing cases), Ex. 4. The Law Office of Nitor V. Egbarin, LLC is also an experienced attorney with successful litigation in the wage and hour FLSA and CMWA matters. *Egbarin Decl.* ¶ 1, curriculum vitae, (listing cases), Ex. 3. Class Counsel has provided a high-quality representation for the Named Plaintiff and the putative FLSA Collective and Rule 23 Class, achieving a substantial recovery involving a settlement of $1,340,000.00.

Fifth, the requested fee and costs in relation to the size of the $1,340,000.00 settlement weighs in favor of granting the requested fee award of one third of the Maximum Gross

---

[5] Class Counsel Hayber, McKenna & Dinsmore, LLC was previously known as The Hayber Law Firm, LLC.

Settlement Amount plus costs advanced, which at this state are still relatively low.  Courts in this Circuit have routinely granted attorney fee requests for one third of the total fund amount made available to claimants[6] in cases with settlement funds substantially larger than this one.

For example, in August 2014, this Court approved a one third fee, or $1.5 million out of a $4.5 million total available fund, in a hybrid Rule 23 and FLSA action involving similar allegations that a company owed Assistant Store Managers unpaid overtime because it paid them under the fluctuating work week method without meeting its strict requirements. *See Kiefer, et. al., v. Moran Foods, LLC, et. al.*, No. 12-CV-756 (D. Conn.) (ECF No. 328) (Aug. 5, 2014 Order Granting Final Settlement Approval, awarding one third of created fund as attorneys' fees plus additional award of $67,000 in litigation costs); *see also Carlone et. al. v. Progressive Casualty Insurance Co.*, No. 3:12-cv-207 (D. Conn.) (ECF No. 145, Nov. 20, 2015) (order approving FLSA Collective settlement including one third or $1,466,666.67 in attorneys' fees and costs); *Zaniewski et. al. v. PRRC, Inc.*, 3:11-cv-1535 (D. Conn.) (ECF No. 125, Feb. 1, 2013) (order approving one third of $2 million settlement fund in Rule 23 and FLSA Collective settlement); *Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *5 (E.D.N.Y. Aug. 6, 2012) (awarding one third of $4.45 million fund in misclassification case); *Alli*, 2012 WL 1356478, at *3 (awarding one third of an approximately $1 million settlement in a FLSA and CMWA case; *Clark v. Ecolab, Inc.*, 2010 U.S. Dist. LEXIS 47036, at *27 (S.D.N.Y. May 11, 2010) (approving one third fee of $2 million settlement fund in FLSA and Rule 23 overtime case); *Mohney v. Shelly's Prime Steak Stone Crab & Oyster Bar*, 2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009) (33% of $3,265,000 fund in FLSA and NYLL case); *Khait v.*

---

[6] "The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007).

*Whirlpool Corp.*, 2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) (33% of settlement or $3,052,500 in FLSA and NYLL case); *Stefaniak v. HSBC Bank USA*, *N.A*., 2008 U.S. Dist. LEXIS 53872 (W.D.N.Y. June 28, 2008) (33% of $2.9 million fund in FLSA and NYLL case). Notably, the majority of these decisions award fees at one third of the total available fund in addition to a separate award reimbursing litigation costs advanced by counsel.[7]  Here, Class Counsel will receive an award of attorneys' fees at 33 1/3% and reimbursement of still modest but already advanced litigation costs.

Finally, public policy considerations also support a one third fee. The FLSA and CMWA are remedial statutes designed to protect the wages of workers.  *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective ensuring that every employee receives "a fair day's pay for a fair day's work") (internal quotation marks omitted).  *Aros*, 2012 WL 3060470, at *4 ("Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA."); *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").  Hence, courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discouraging future misconduct of a similar nature.  *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Aros*, 2012 WL 3060470, at *4; *Khait*, 2010 WL 2025106, at *8. Class actions are also an invaluable safeguard of public rights.  *See Phillips Petroleum Co. v.*

---

[7] *See, e.g., Kiefer*, No. 12-CV-756 (D. Conn. Aug. 5, 2014) (ECF No. 328) (awarding $67,000 in advanced litigation costs in addition to one third of created fund as attorneys' fees); *Clark*, 2010 WL 1948198 at *9 ("The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $62,591.89, which the Court deems to be reasonable."); *Khait*, 2010 WL 2025106 at *10 (reimbursing Class Counsels' costs in the amount of $70,000, in addition to one third of the fund as attorneys' fees).

*Shutts*, 472 U.S. 797, 809 (1985); *J.I. Case Co. v. Borak*, 377 U.S. 426, 433-34 (1964).

Particularly where, as here, the settlement fund is relatively small, an award of attorneys' fees

ensures that "plaintiffs' claims [will] likely . . . be heard." *Frank*, 228 F.R.D. at 189.  If courts

denied sufficient attorneys' fees "no attorneys . . . would likely be willing to take on . . . small-

scale class actions[.]" *Id.*; *Aros*, 2012 WL 3060470, at *4; *deMunecas*, 2010 WL 3322580, at *8;

*Sand*, 2010 WL 69359, at *3.

        ii.       <u>A Lodestar Cross-Check Confirms That the Requested Attorneys' Fee is Reasonable</u>

Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage

method and loosely use the lodestar method as a "baseline" or as a "cross check."  *Goldberger*,

209 F.3d at 50. As part of the cross check, the lodestar is determined by multiplying the hours

reasonably expended on the case by a reasonable hourly rate.  *Hicks*, 2005 WL 2757792, at *8.

In "cross-checking" the lodestar, the "hours documented by counsel need not be exhaustively

scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Rather, "the reasonableness of the

claimed lodestar can be tested by the court's familiarity with the case…" *Id.* As indicated in

Section E.1, above, Class Counsel has spent over 316.58 hours on the case. At Class Counsel's

hourly rates, the value of legal fees to date is approximately $105,832.50.

Here, Class Counsel's request for a one third contingency is reasonable in light of fee

awards courts have approved in similar cases. *See, e.g., Zeltser v. Merrill Lynch & Co*., 2014

U.S. Dist. LEXIS 135635, at *22 (S.D.N.Y. Sept. 23, 2014) (awarding fees of $2.3 million or

one third of common fund in wage and hour class settlement, which represented 5.1 multiplier);

*Yuzary*, 2013 U.S. Dist. LEXIS 144327, at *29 (awarding multiplier of 7.6 in wage and hour

misclassification class action); *Davis*, 827 F. Supp. 2d at 185-86 (awarding multiplier of 5.3 in

wage and hour class action); *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. Apr. 29,

2013) (awarding class counsel 33% fee award in a $4.9 million settlement of a federal and state

wage and hour misclassification case; lodestar multiplier of 6.3).

Further, after Class Counsel spends additional time on this litigation in connection with

implementing and monitoring the settlement, and accepting the payment over five years, the

lodestar will be even higher. Among other things, Class Counsel will be required to answer class

member questions (especially after the fund is distributed), determine amounts due to each Rule

23 Class and FLSA Collective member, and negotiate any potential disagreements with

Defendants about the administration of the settlement and distribution of the fund.  Since Class

Counsel will likely perform additional work after the final approval hearing, Class Counsel's

request is "even more reasonable than it appears at first glance."  *Beckman*, 293 F.R.D. at 482;

*see also Aros*, 2012 WL 3060470, at *7.

## VII.    CONCLUSION

As discussed above, the proposed settlement resolves *bona fide* disputes over unpaid

wages under the FLSA. Further, the proposed settlement is fair and reasonable as it is the product

of arms-length negotiations between experienced legal counsel achieved with the assistance of a

Magistrate Judge. Moreover, the proposed settlement achieves immediate recovery for

individuals who choose to accept their share, while allowing any individuals who may choose to

pursue their individual claims to do so.  Accordingly, this Court should approve the Settlement

Agreement.

SG-20942784.1

Respectfully submitted,

KEFILWE LEKUNTWANE, and others similarly
situated,


By Their Attorneys,

_____/s/ *Richard E. Hayber*_
Richard E. Hayber (ct11629)
Hayber Law Firm, LLC
221 Main Street, Suite 502
Hartford, Connecticut 06106
Telephone: (860) 522-8888
rhayber@hayberlawfirm.com




By://s// ct05114_____
       Nitor V. Egbarin, ct05114
       Law Office of Nitor V. Egbarin, LLC
       100 Pearl Street, 14th Floor
       Hartford, CT  06103-3007
       Tel: (860) 249-7180
       Fax: (860) 408-1471Email:
       NEgbarin@aol.com

24

## **CERTIFICATION OF SERVICE**

I hereby certify that on May 01, 2024, a copy of the foregoing was filed electronically [and service made by mail to anyone unable to accept electronic filing].  Notice of this filing will be sent by email to all parties by operation of the Courts electronic filing system [or by mail for anyone unable to accept electronic filing].  Parties may access this filing through the Courts system.

 /s/ *Richard E. Hayber*
Richard E. Hayber

SG-20942784.1